IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2015

## MARQUETTE HOUSTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 03-08488    Glenn Ivy Wright, Judge**

_____

**No. W2014-02201-CCA-R3-PC  -  Filed September 28, 2015**

_____

The Petitioner, Marquette Houston, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his 2005 conviction for second degree murder and his twenty-five-year sentence. The Petitioner contends that the post-conviction court erred by denying him relief on his ineffective assistance of counsel claim. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Marquette Houston.

Herbert H. Slatery III, Attorney General and Reporter;  Rachel Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Carla Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the Petitioner's second degree murder conviction stemming from the death of a bystander during a 2003 shooting incident between the Petitioner and another person. This court affirmed the Petitioner's conviction on appeal but remanded the case for resentencing. *See State v. Marquette Houston*, No. W2008-00885-CCA-R3-CD, 2009 WL 2357146 (Tenn. Crim. App. July 30, 2009). Upon resentencing, the Petitioner appealed, and this court summarized the facts of the case as follows:

The evidence presented at defendant's trial established that for several years, Bernard "Chuck" Barnes and Albert "Mac Al" Thomas had been engaged in a dispute over payment for work done by Mr. Barnes to Mr. Thomas' automobile motor. According to Mr. Thomas' trial testimony, he and the defendant were friends and he had told the defendant about his disagreement with Mr. Barnes. Mr. Thomas testified that the defendant said he "was going to get up" with Mr. Barnes, which Mr. Thomas explained could mean "you [were] going to fight him, jump on him. . . shoot him, whatever." On April 28, 2003, Mr. Barnes and Mr. Thomas stopped their vehicles on Hollywood Street near Vollintine Street. Seconds later, a truck driven by the defendant came "zooming" down Hollywood and up a hill onto Vollintine Street. When the defendant reached the top of the hill, he stopped the truck and began shooting at Mr. Barnes with a .40 caliber handgun. Mr. Barnes returned fire with a .9mm handgun. Claude Franklin was mowing the front lawn of his residence near Hollywood Street and was fatally wounded in the chest. An autopsy report revealed that Mr. Franklin died of internal bleeding caused by a gunshot wound to the chest. A .40 caliber bullet was recovered from Mr. Franklin's body. On direct appeal, this court . . . remanded the case for resentencing under the sentencing scheme in place prior to the 2005 amendments.

On March 25, 2008, the trial court conducted a resentencing hearing. The defendant testified that he was imprisoned at the Hardeman County Correctional Facility. He stated that since his incarceration, he had obtained an anger management certificate and had enrolled in a program to earn his GED certification. The defendant admitted that prior to his incarceration, he had been involved in using and selling drugs. Regarding the killing, he stated that he made a mistake and claimed, "I was young and I was misled at the time . . . selling drugs, doing what I was doing in [the] street[.]" The defendant asserted that he had no father figure and his mother could not work. He admitted that he used a gun in commission of the offense and claimed that the incident happened because he was standing up for his "supposed to be friend." The defendant stated that he "hated it even happen." [sic] He claimed that he was not aware the victim was present when he fired his gun. According to the defendant, "It hurts because . . . I still feel like I didn't shoot that person." The presentence report revealed that the defendant had one prior conviction for vandalism and two prior convictions for assault and battery. The trial court again sentenced the defendant as a Range I, violent offender to the maximum sentence for a Class A felony, twenty-five years.

*Id.* at \*1-2 (internal citations omitted).

This court affirmed the sentence, and the Petitioner filed a petition for post-conviction relief, which was summarily dismissed by the post-conviction court as time-barred. On appeal, the State conceded that the petition was timely, and this court reversed and remanded the case for an evidentiary hearing. *See Marquette Houston v. State*, No. W2011-01073-CCA-R3-PC, 2012 WL 1478760 (Tenn. Crim. App. Apr. 25, 2012). The Petitioner amended his petition for post-conviction relief, alleging multiple ineffective assistance of counsel claims. After a hearing, the post-conviction court denied relief.

The Petitioner's sole claim on appeal is the ineffective assistance of counsel due to trial counsel's failure to call mitigating witnesses at the sentencing hearing. Our recitation of the evidence will be limited to this issue.

At the post-conviction hearing, trial counsel testified that as part of his pretrial investigation, he attempted to contact and subpoena witnesses. Counsel said that he was unable to interview Albert Thomas and that Bernard Barnes refused an interview. Mr. Barnes told the investigator to review the statement that Mr. Barnes provided to the police shortly after the shooting. Counsel said the defense theory was that the Petitioner was acting in defense of another person and that the victim's death was accidental.

Trial counsel testified that although he had never tried a capital case, he was familiar with mitigation evidence. Counsel said he did not present any witnesses at the sentencing hearing. He did not remember whether the Petitioner's mother attended the sentencing hearing or why she was not presented as a witness. The Petitioner testified at the sentencing hearing.

Trial counsel testified that he had been a public defender for nineteen years and had tried thirty to forty first degree murder cases. In preparation for the trial, counsel spoke to the Petitioner once every forty-five days and more frequently as the trial date approached. He said that the Petitioner admitted the shooting in a statement to police and that counsel's goal was to obtain a verdict of not guilty. Counsel attempted unsuccessfully to suppress the Petitioner's statement. Counsel considered a second degree murder verdict to be a success.

Trial counsel testified that he did not remember if he discussed mitigating factors with the Petitioner, and that counsel's file did not reflect that such a discussion was held. Counsel generally requested a mental health evaluation of his clients in first degree murder cases, but he could not remember whether he requested it in this case. Counsel did not know of any obvious mitigating factors in the Petitioner's case.

Trial counsel testified that he was not surprised the trial court imposed the maximum sentence. He said

> Judge Beasley on . . . murders and cases like that[,] you can expect twenty-five or twenty-four [years] usually unless there's mitigation in the facts . . . especially in this case where there was an innocent bystander killed. . . . I was expecting either twenty-four or twenty-five [years. That's] typically what he sentences in . . . a murder two [verdict.]

Counsel acknowledged that it was possible mitigation testimony might have reduced the Petitioner's sentence from twenty-five years to twenty-four years.

Upon examination by the post-conviction court, trial counsel testified that he did not remember whether the State extended a plea offer before the trial. His file did not reflect that a plea offer was made.

Angela Houston, the Petitioner's sister, testified that she did not receive a subpoena to testify at either sentencing hearing. She said if she had testified, she would have said that she loved her brother and that he did not have a "fair chance." The Petitioner's sister said that when she was growing up, her brother protected her. He walked her to school and to the store at night and ensured that she obeyed their mother and stayed out of trouble. She said that she visited the Petitioner in jail when she could, spoke to him by telephone, and wrote to him.

The Petitioner's sister testified that she was not present at the shooting and that she could not testify about the Petitioner's actions that day. She said that the Petitioner was not violent and that she did not know him to carry a gun.

Eva Houston, the Petitioner's mother, testified that she did not receive a subpoena or testify at either sentencing hearing. She said that if she had testified, she would have said that the Petitioner lived with her as a child and was a good son. He went to school as a child and helped care for his two siblings. The Petitioner's mother said that the Petitioner took his siblings to the store and to school, played with them, and changed their diapers. She said that she loved and missed her son and wished he were still at home.

The Petitioner's mother testified that she did not know the Petitioner pleaded guilty to vandalism in 2001 and to three counts of assault in 2001 and one count of assault in 2003. She said that she suffered from seizures during that time and that the Petitioner was not living with her. She knew the Petitioner was a good son, but she did not know what the Petitioner did after he moved out of her home in 2001.

The Petitioner testified that trial counsel visited him three times during the twenty months he was in jail and that each visit was close to the time he was indicted. He said that counsel provided one-half of the discovery materials to him but that the Petitioner never saw the autopsy report, witness statements, or the evidence the State intended to present at the trial. The Petitioner said that he told counsel about the missing materials but that counsel never gave them to the Petitioner. The Petitioner met with counsel's investigator about two weeks before the trial. The Petitioner said that he told counsel everything he knew about the case.

The Petitioner testified that on the day of the trial, trial counsel told him that the prosecutor was ill and did not want a trial. Counsel told the Petitioner that the State made a plea offer for twenty years' confinement, but the Petitioner did not want to accept it because he did not see the victim or intend to shoot him. The Petitioner said that if it meant he could have received a reduced sentence, he would have wanted his mother and sister to testify at the sentencing hearing.

The Petitioner agreed that at the trial, he faced a life sentence but ultimately received a twenty-five-year sentence. Although the Petitioner admitted that he fired the gun, he felt that because he did not intend to kill the victim, he should not have been sentenced to twenty-five years.

The Petitioner testified that one of his previous assault convictions was the result of a jail fight after his arrest in this case and that another assault conviction occurred after a woman intervened during a fight the Petitioner had with another man. The vandalism conviction related to his throwing a rock at a building. All of the convictions were misdemeanors.

The post-conviction court denied relief. Relative to trial counsel's failure to present mitigating witnesses, the court found that the decision was tactical. It found that the benefit of the Petitioner's mother's testimony was "unclear" given that she did not know about the Petitioner's other convictions. The court found that during the sentencing hearing, the Petitioner admitted owning a gun, killing an innocent bystander, and buying and selling drugs. It also found that counsel raised mitigating factors, including the Petitioner's "somewhat stable" work history, his youth, and the fact that he was not aiming for the victim. The court noted that the Petitioner was a Range I, violent offender, which required a minimum sentence of twenty years. The court found that the Petitioner's criminal history was used to enhance the sentence to twenty-five years. The court concluded that even if counsel's performance were deficient, any prejudice to the Petitioner was slight because of the facts of the case.

On appeal, the Petitioner contends that the post-conviction court erred by concluding that trial counsel provided the effective assistance of counsel. He argues counsel was ineffective by failing to present his sister and mother as mitigation witnesses at the sentencing hearing. He asserts he has established prejudice in connection with his ineffective assistance claim because counsel admitted at the post-conviction hearing that it was possible the Petitioner might have received twenty-four years instead of twenty-five years had the witnesses been presented.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however,

only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The record reflects that due to the length of time between the trial and the post-conviction hearing, trial counsel could not recall why the Petitioner's sister and mother were not presented as witnesses at the sentencing hearing. Counsel testified that there were no obvious mitigating factors. The trial court found no statutory mitigating factors during the sentencing hearing, but it considered the mitigating evidence of the petitioner's work history and involvement in GED and anger management classes in prison as "other factor[s]." The post-conviction court found that counsel made a tactical decision not to present mitigation witnesses in addition to the mitigation evidence presented and that the benefit of the Petitioner's mother's testimony was "unclear" given her lack of knowledge of the Petitioner's criminal record.

Tennessee Code Annotated sections 40-35-113 and -14 enumerate the statutory mitigating and enhancement factors available to courts in determining the length of a sentence. Relative to enhancement factors, the trial court found that enhancement factor (1) applied given the Petitioner's previous convictions and their violent nature. *See* T.C.A. § 40-35-114(1) (Supp. 2007) (amended 2008, 2012, 2015) ("The defendant has a previous history of criminal convictions or criminal behavior[.]"). The court also found that enhancement factor (9) applied because the Petitioner used a firearm during the commission of the offense. *See id*. § 40-35-114(9)("The defendant possessed or employed a firearm . . . during the commission of the offense[.]") Relative to mitigating factors, the court found that the Petitioner's work history and involvement in GED and anger management programs in prison were "other factor[s]" to be considered. *See id*. § 40-35-113(13) (2014). (Mitigating factors may include "[a]ny other factor consistent with the purposes of this chapter.")

At the sentencing hearing, the trial court placed significant weight on the firearm enhancement factor. The court discussed the intent of the legislature and the causal connection between the Petitioner's carrying and using a firearm and the victim's death. When considering the mitigating factors presented by the Petitioner, the trial court stated,

> [I]n weighing those [mitigating] factors against the serious nature of the offense [and] the enhancement factors . . . the Court is of the opinion that they do not outweigh the weight that should be given to the fact that [the Petitioner] used a gun. . . [and] an innocent man's life was taken.

The court also considered the Petitioner's prior criminal record and criminal behavior, which included violence, but it placed significant weight on the Petitioner's having used a gun. Based on the court's sentencing determination, the evidence does not preponderate against the trial court's findings that trial counsel was not deficient in his failure to present the Petitioner's sister and mother to testify about the Petitioner's behavior before he left their home and began committing crimes.

Further the Petitioner has not shown that he was prejudiced by trial counsel's failure to present the Petitioner's mother and sister at the sentencing hearing. Although the testimony of his sister and mother could have been considered relevant to mitigating factor (13), the trial court found that the existing enhancement factors far outweighed any mitigating factors. The court considered the Petitioner's work history and GED and anger management classes in prison, which were recent and more relevant mitigating factors. Given the court's reliance on the Petitioner's previous criminal history and use of a firearm in its sentencing determinations, the post-conviction court did not err in determining that the proffered testimony would not have changed the outcome of the sentencing hearing. We note the post-conviction court's finding that the Petitioner's mother was not aware of the Petitioner's criminal history and that his sister's testimony was limited to the Petitioner's childhood. There is no evidence that the result of the sentencing hearing would have been different had the witnesses been presented. Counsel's testimony that the Petitioner might have received a sentence of twenty-four years if mitigation testimony had been presented was speculation. The relevance of the proffered mitigation testimony is minimal and is in stark contrast to overwhelming enhancement factors which the trial court found in determining that a twenty-five year sentence was appropriate. The Petitioner has not shown that the post-conviction court erred in concluding that counsel was not deficient and that the Petitioner was not prejudiced by counsel's performance at the sentencing hearing.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE